## ED. LEWIS v. C. F. SUSMILCH, Appellant.

**Commission for Sale of Land:** EVIDENCE. In an action by a broker for commission in procuring a purchaser for land it is held; first, that evidence of a letter written by the broker to the owner . informing him that he had interested a prospective purchaser, was admissible on the question of the purpose of the coming together of the parties; second, evidence of statements of the prospective purchaser respecting commission; third, where evidence of a collateral matter has been improperly received, the court may permit the whole matter to be gone into by the other party.

**Commissions:** RECOVERY OF: EVIDENCE. Under a commission contract to procure a purchaser on stated terms, the agents right to commission upon a completed sale at the terms specified is not affected by the fact that other inducements to buy were offered the purchaser.

**Same.** The fact that a broker stated to the purchaser that the land ought to be bought for less than the price asked, should be considered on the question of the agents instrumentality in procuring a purchaser, but was not conclusive that he was not honestly endeavoring to effect a sale.

**Same.** Where a sale of land is consummated on the terms proposed, the agent is not required to prove that he produced a purchaser able, ready and willing to buy on such terms, to recover his commission.

**Commissions:** WHEN EARNED: INSTRUCTION. Where a broker is employed to procure a purchaser for land and the agent informs the prospective purchaser that he can buy the land and presents him to the owner who understands that he is a prospective buyer, the fact that the purchaser understood he was to meet the owner for another purpose will not affect the agent's right to commission, no bad faith on his part being shown.

*Appeal from Hardin District Court.*— HON. J. H. RICHARD, Judge.

MONDAY, MARCH 12, 1906.

ACTION for services rendered in procuring a purchaser for land. Judgment for plaintiff. The defendant appeals. —*Affirmed.*

*Albrook & Lundy,* for appellant.

*Chantland & Hadley* and *Huff & Huff,* for appellee.

LADD, J.— On June 26, 1902, the plaintiff, who was engaged in the real estate business at Ft. Dodge, had listed with him a certain half section of land located near Gowrie. William A. Straight was a prospective purchaser, but desired to ascertain before buying whether the defendant would permit tiling to be extended through an adjoining quarter section belonging to him. To learn this plaintiff had an interview with the defendant at Eldora. At that time, according to the plaintiff's testimony, the defendant proposed to sell his one hundred and sixty acres at $62.50 per acre, and requested plaintiff to see if he could not interest Straight and induce him to buy. Upon his return to Ft. Dodge he informed Straight that he could purchase the land at the price mentioned, suggested that it would be a good thing for him to do, and proposed that Straight meet the defendant at Gowrie on the 4th of July. This proved agreeable, and he then wrote to defendant that he had Straight interested in buying the land and that he thought they might meet at Gowrie. It was arranged with Straight that plaintiff should go to Gowrie and return if defendant was not there. As he did not return, Straight went, and after some parley met defendant, and the two drove out to see the land. A few days later they entered into a contract by which defendant agreed to sell Straight the quarter section at the price proposed, and this was subsequently done by the execution of a deed. The defendant denied that he had ever talked with plaintiff about selling his land, and Straight testified that he supposed, when going to Gowrie,

that it was for the purpose of arranging with reference to the drainage.

I. The evidence that plaintiff wrote a letter to defendant from Ft. Dodge, stating that he had interested Straight in the purchase of the land, was objected to. It was admissible, as tending to show that defendant was advised of his purpose in having Straight come to Gowrie to meet him.

1. COMMISSION FOR SALE OF LAND: evidence.

The objection to the question propounded to plaintiff, " Did Mr. Straight say anything about the commission matter ? " should have been sustained. The ruling, however, was without prejudice; for the answer given was precisely like previous statement made without objection.

On cross-examination the plaintiff testified fully concerning the sale of the half section of land, and that, had he been able to complete it, his commission would have been $4 per acre. On redirect examination he testified that he did not sell it, and was then asked, " Who did sell it? " and over objection answered that the defendant sold it to Straight. As the defendant had gone into this collateral matter with the evident purpose of prejudicing the jury, we think it was within the court's discretion to receive proof of the entire transaction. The defendant was asked whether he owned any other half section in Webster county. This was irrelevant to any issue in the case, but the answer that he did was without prejudice.

II. Straight testified that he would not have purchased the land, had he not been able to get the half section, and that he obtained it by paying $44.75 per acre less than Lewis had offered it. Because of this it is insisted that plaintiff did not procure a purchaser of the land on the terms proposed. The mere fact that the defendant was required, in order to make the sale, to offer an additional inducement, namely, that of selling other land, did not affect the terms of the sale of this tract. The price named was $62.50 per acre.

2. COMMISSIONS: recovery of: evidence.

That is precisely what Straight paid. So that, even though other inducements were offered, the sale was effected at the price exacted by defendant in requesting plaintiff to interest Straight. For this reason we need not discuss the question argued as to whether, where a purchaser is produced to whom a sale is made by the owner at less than the price given or on different terms than that proposed to the agent, this will relieve the owner from paying the stipulated commission. But see *Reid v. McNerney,* 128, Iowa, 350; *Ratts v. Shepherd,* 37 Kan. Sup. 20 (14 Pac. 496); *Smith v. Anderson,* 2 Idaho, 497 (21 Pac. 412).

III. When plaintiff stated defendant's price to Straight, the latter remarked that it ought to be bought at $60 per acre. To this the plaintiff answered that that would be enough, but that defendants price was $62.-

**3. SAME.**
50 per acre. Appellant argues that this is conclusive that plaintiff was not undertaking to induce Straight to buy the land. Bad faith is not pleaded, and it may well be said that in making the sale it was not incumbent on the broker to controvert every statement of the prospective purchaser in diminution of value. The evidence should be considered in determining whether the purchaser was procured by plaintiff, but certainly was not conclusive as showing that he was not honestly endeavoring to bring about a sale of the land.

IV. The third instruction was not erroneous in omitting to require proof that the purchaser was able, ready, and willing to complete the purchase upon the prescribed terms; for this is unnecessary, where the sale is con-

**4. SAME.**
summated on the precise terms proposed.

In the fifth instruction the court stated the questions to be determined thus: "Did the plaintiff bring said purchaser to defendant, or put defendant and pur-

**5. COMMISSIONS: when earned: instructions.**
chaser into the communication or the negotiation which finally ended in the sale of the land to said purchaser? And if you find the plaintiff did take

the said purchaser as a buyer for the land, or did put the parties in the negotiation or the communication which ended in the purchase of the land by said Straight, then you will find that plaintiff performed such engagement and will allow him compensation for his services." It is said that this authorized recovery, even though he simply brought defendant and Straight together to consult concerning the drainage. That drainage may have been discussed is not material, if they also negotiated with reference to the sale; and the language of the instruction carefully limits the effort of plaintiff to that negotiation or communication which resulted in the sale. If the defendant employed him to procure Straight as a purchaser, and he indicated to Straight that he could buy the land, and presented him to defendant in such a way that defendant understood he was a prospective purchaser, it is entirely immaterial, in the absence of bad faith, whether Straight supposed he was going to meet defendant for the purpose of talking about tile drainage across defendant's land or with a view of purchasing it.

V. The contention that the defendant, in the conversation at Eldora, merely suggested the propriety of Straight buying the land, without intention of employing plaintiff to procure him as purchaser, might have been found by the jury; but this was not necessarily the inference to be drawn. It might quite as well have been concluded that he intended to engage him to procure Straight as a purchaser, and with the jury's conclusion to this effect, and that through his efforts the parties were brought together, and that this resulted in a sale, we are not disposed to interfere.— *Affirmed.*